\*NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SANFORD WILLIAMS, JR., | : | |
| | : | Civil Action No. 15-121 (JLL) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CHRISTOPHER REINHARDT, | : | |
| | : | |
| Defendant. | : | |

**LINARES**, District Judge:

Presently before the Court is Defendant Christopher Reinhardt's motion for summary judgment. (ECF No. 29). Plaintiff filed responses to the motion (ECF Nos. 36, 42), to which Defendant responded. (ECF No. 40). For the following reasons, this Court will deny Defendant's motion in part, grant Defendant's motion in part, and will enter judgment in favor of Defendant as to Plaintiff's sole remaining claim for false arrest/false imprisonment.

### I. BACKGROUND

In this action, Plaintiff, Sanford Williams, raises a claim for false arrest/false imprisonment against Detective Christopher Reinhardt arising out of Plaintiff's arrest for the theft of approximately forty truck batteries. (ECF Nos. 7, 8). The documents submitted by the parties in support of and in opposition to the current motion establish the following factual background for that claim. On November 26, 2013, Detective Reinhardt was called to an open lot in Livingston, New Jersey, to investigate the theft of some forty batteries from dump trucks stored in

that lot. (Document 3 attached to ECF No. 29 at 5). While investigating that incident, the detective found a pair of brown work gloves – one on the ground of the lot, and another "inside the battery box of one of the trucks." (*Id.*). Although these gloves were dirty and could not be checked for finger prints, they were not frozen to the ground or otherwise indicative of having spent a significant period of time outside. (*Id.*). Reinhardt also found a pair of vise grip pliers on the hood of a truck parked by the street, though it wasn't clear whether this was actually used in the theft. (*Id.*). Following the placement of the gloves and pliers into evidence, the gloves were shipped off to the New Jersey State Police for DNA testing. (*Id.*).

Initial DNA testing, which was returned in January 2014, indicated that the gloves both contained DNA from the same source (*see* ECF No. 36 at 36), but that this DNA did not match any profile that was then available in CODIS, the Combined DNA Index System maintained by the FBI. (Document 3 attached to ECF No. 29 at 5). An official report produced by the lab in April 2014 likewise confirmed that the State Police could not identify the DNA contained in the gloves at that time without being provided a sample to test against the gloves. (ECF No. 36 at 34). The investigation of the theft of the batteries apparently stalled at that point.

On August 6, 2014, however, Reinhardt received a letter from a forensic scientist from the New Jersey State Police's laboratory. (ECF No. 36 at 32). In that letter, Reinhardt was informed that during a new search of CODIS, "a match occurred between [the glove DNA sample] and New Jersey convicted offender Sanford Williams" and that the State Police had therefore provided the letter as a possible lead in Reinhardt's investigation. (*Id.*; *see also* Document 3 attached to ECF No. 29 at 13). The letter did present a caveat, however, which stated that although Plaintiff's CODIS sample had matched the gloves, the State Police could not definitively conclude that

2

Plaintiff was the source of the DNA without directly comparing the glove sample against a new buccal sample from Plaintiff. (ECF No. 36 at 32).

Based on this letter, Reinhardt ran a search for Plaintiff and discovered that Plaintiff had a criminal history "dating back to the 1960s" including prior arrests for stealing batteries from vehicles. (Document 3 attached to ECF No. 29 at 13). Reinhardt's search for Plaintiff also turned up an April 2014 report from the Morris County Prosecutor's officer which listed Plaintiff as a fugitive from justice (Document 3 attached at ECF No. 29 at 7), and a report from the Ramapo Police Department regarding Plaintiff's having been stopped along the Bergen County Border with New York on April 11, 2014. (Document 3 attached to ECF No. 29 at 9). In that report, the Ramapo police stated that Plaintiff had been pulled over by a Chester Township police officer on April 11, 2014. (*Id.*). At that time, Plaintiff was already wanted by the Ramapo police for "stealing truck/bus batteries in January 2014." (*Id.*). The letter further stated that, when Ramapo police took control of Plaintiff's car, the car contained six such batteries. (*Id.*). The Ramapo report also stated that Plaintiff was known to sell stolen batteries to auto parts and salvage yards, and that batteries had previously been recovered at an auto parts store in Newark. (*Id.*).

Based on the potential DNA match and the background evidence suggesting that Plaintiff had a history of engaging in the theft of large vehicle batteries in the past, Reinhardt concluded that he had probable cause to arrest Plaintiff for the theft of the batteries in Livingston. (Document 3 attached to ECF No. 29 at 13). Reinhardt therefore prepared a complaint arrest warrant, presented the information he possessed to a municipal court administrator/municipal judge named Walter Mollinueax, and received a signed warrant for Plaintiff's arrest from the municipal judge on August 25, 2014. (*Id.*). Reinhardt then attempted to reach Plaintiff at a

3

phone number he provided during his last arrest, but met with no success, and therefore asked Plaintiff's federal probation officer to set up a meeting so that Plaintiff could be taken into custody on the warrant issued on August 25. (*Id.*). Plaintiff was thereafter arrested at the probation officer's office on September 9, 2014, based on Reinhardt's warrant. (Document 4 attached to ECF No. 29 at 3). Following Plaintiff's arrest, a further DNA test confirmed that Plaintiff was, indeed, the source of the DNA in the gloves (ECF No. 36 at 38), and Plaintiff was ultimately indicted for the theft of the batteries in May 2015. (ECF No. 36 at 30).

## II. DISCUSSION

### A. Legal Standard

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "'A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the non-moving party.'" *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (quoting *Natale v. Camden Cnty Correctional Facility*, 318 F.3d 575, 580 (3d Cir. 2003)). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *id.* at 265 (internal quotations omitted), but must not make

4

credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "'A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial.'" *Serodio*, 27 F. Supp. 3d at 550 (quoting *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001)). That said, "the party opposing the motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial." *Id.*

### B. Analysis

Following this Court's prior screening orders and opinion, the only claim which remains in this matter is Plaintiff's claim that Defendant Reinhardt violated his Fourth Amendment rights by falsely arresting and imprisoning him, a claim brought pursuant to 42 U.S.C. § 1983. Defendant now moves for summary judgment as to that claim. Defendant essentially makes two arguments, one legal and one factual: that the finding by a neutral magistrate of probable cause

resulting in the issuance of a warrant immunizes Defendant from liability for false arrest, and that Defendant in any event had probable cause to arrest Plaintiff at the time he sought an arrest warrant.

In his central legal argument, Defendant suggests, relying on old New Jersey Appellate Division cases, that a defendant in a common-law false imprisonment or false arrest case in New Jersey is not liable for such a false arrest where he followed the applicable procedures for obtaining and did ultimately obtain an arrest warrant. *See Genito v. Rabinowitz*, 225 A.2d 590, 592 (N.J. App. Div. 1966) (the "malicious filing of a false complaint which causes the issuance of a warrant upon which one is arrested does not give rise to a [common law] cause of action for false imprisonment[; t]he action must be one for malicious prosecution"). Regardless of whether Defendant's argument is an accurate account of New Jersey common law tort principles,[1] *Genito* is immaterial to this matter which is brought pursuant to § 1983.

To establish a false arrest/false imprisonment claim under § 1983, a plaintiff must establish that he was arrested by a state actor without probable cause. *Sharrar v. Felsing*, 128 F.3d 810, 827 (3d Cir. 1997), *abrogated on other grounds*, *Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007); *Paszkowski v. Roxbury Twp. Police Dep't*, 581 F. App'x 149, 152 (3d Cir. 2014) (the proper inquiry in a § 1983 false arrest is "whether the arresting officers had probable cause to believe the person arrested had committed the offense.") (quoting, in full, *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)). "[A]n arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir.

---

[1] Given the fact that *Genito* chiefly concerned the dividing line between false arrest and malicious prosecution, it is not clear that *Genito* stands for the proposition that false imprisonment *never* lies as a common law tort where a warrant was ultimately obtained.

6

2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). As the Third Circuit explained in *Wilson*, "a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant,' and (2) that 'such statements or omissions are material, or necessary to the finding of probable cause." *Id.* (quoting *Sherwood*, 113 F.3d at 399); *see also Dempsey v. Bucknell Univ.*, --- F.3d ---, ---, 2016 WL 4434400, at *6 (3d Cir. 2016). Thus, an officer must present to the neutral magistrate accurate and materially complete information or "the protection afforded by the magistrate's review is lost." *Dempsey*, 2016 WL 4434400 at *6. Thus, Defendant's argument that he is entitled to judgment as a matter of law merely because he received a warrant is inaccurate, and that argument provides no basis for the granting of his motion at this time. As Defendant does not provide copies of any affidavit he presented to the municipal court in this matter, this Court is unable to address whether he made any material omissions in that presentation. For the reasons explained below, however, this Court need not address that question to resolve Plaintiff's claim.

Defendant, in his moving papers, also asserts factually that, given all available facts in his possession on August 25, 2014, he possessed probable cause to arrest Plaintiff, and is thus entitled to summary judgment.[2] As this Court previously explained to Plaintiff, probable cause exists

---

[2] The parties also dispute whether Defendant should have sought a summons rather than a warrant given Plaintiff's history. For Plaintiff's § 1983 false arrest claim, the distinction is immaterial as the municipal judge did issue a warrant for Plaintiff's arrest, presumably based on a finding that there was reason to believe Plaintiff would not appear in response to a summons. Because a warrant was issued, and the issuance of such a warrant requires a finding of probable cause, *see* N.J. Court Rule 7:2-1, 7:2-2, the question before this Court remains whether

7

"'whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.'" *Paszkowski*, 581 F. App'x at 152 (quoting *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)). A finding of probable cause therefore only requires that there be a "fair probability" that the plaintiff committed the crime for which he is to be arrested. *Wilson*, 212 F.3d at 789. Given this requirement, courts both within this federal circuit and in New Jersey have concluded that a preliminary CODIS DNA match can itself be sufficient to support a finding of probable cause where the DNA sample being tested came from evidence reasonably connected to the alleged crime. *See United States v. McNeill*, No. 06-373, 2007 WL 2234516, at *7-8 (W.D. Pa. Aug. 2, 2007) (finding a preliminary DNA CODIS match between the defendant and a freshly smoked cigarette found outside a crime scene where a witness stated that her robber had smelled like cigarette smoke sufficient for probable cause); *see also State v. Stevenson*, 2011 WL 4444478, at *4 (N.J. App. Div. Sept. 27, 2011) (finding a preliminary DNA match between the defendant's CODIS sample and blood stains found at a burglary scene where the victim did not know Defendant sufficient to establish probable cause).

Based on the facts known to Reinhardt at the time he sought the arrest warrant for Plaintiff, it is clear that Reinhardt possessed probable cause to suspect that Plaintiff had stolen the truck batteries in Livingston. That conclusion is warranted here because Reinhardt possessed not only the preliminary CODIS match which strongly suggested that Plaintiff had worn the gloves found at the crime scene including the glove found in one of the battery boxes of the trucks, but also

---

Defendant had probable cause to arrest Plaintiff given all of the facts known to him at the time he sought the warrant. *Wislon*, 212 F.3d at 786.

8

because that match led Reinhardt to reports that Plaintiff had a history of engaging in similar incidents – stealing batteries out of large vehicles and reselling them to junk yards and auto parts stores. Given this information, which this Court concludes is at least reasonably trustworthy, a reasonably cautious officer in Reinhardt's position would certainly conclude that it is quite likely that Plaintiff was responsible for the theft of the truck batteries in Livingston. As such, it was more than fairly probable that Plaintiff was responsible based on the facts at hand, and Reinhardt was correct to conclude that probable cause existed for Plaintiff's arrest at the time Reinhardt sought the warrant. *Wilson*, 212 F.3d at 789; *Paszkowski*, 581 F. App'x at 152. Thus, even putting aside the warrant which Reinhardt ultimately obtained, it is clear that Defendant is entitled to summary judgment on Plaintiff's false arrest/false imprisonment claims because Reinhardt possessed probable cause to arrest him at the time of the arrest. *Wilson*, 212 F.3d at 786-87; *Paszkowski*, 581 F. App'x at 152 (a false arrest claim requires that the plaintiff show he was arrested without probable cause); *see also Sharrar*, 128 F.3d at 827; *Groman v. Twp. Of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Defendant's motion must therefore be granted, and judgment entered in Defendant's favor as to Plaintiff's false arrest/false imprisonment claim.

### III. CONCLUSION

For the reasons stated above, this Court will deny Defendant's motion in part, grant the motion in part, and will enter judgment in Defendant's favor as to Plaintiff's sole remaining claim for false arrest/false imprisonment claim. An appropriate order follows.

IT IS SO ORDERED.

DATED: September 12th, 2016


_____
Hon. Jose L. Linares,
United States District Judge