*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SANFORD WILLIAMS, JR., | : | |
| | : | Civil Action No. 15-121 (JLL) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CHRISTOPHER REINHARDT, | : | |
| | : | |
| Defendant. | : | |

**LINARES**, District Judge:

Presently before the Court is Plaintiff Sanford Williams's motion to amend this Court's Order granting Defendant Christopher Reinhardt summary judgment in this matter brought pursuant to Federal Rule of Civil Procedure 59(e). (ECF No. 48). Defendant has filed a response to the motion (ECF No. 49), to which Plaintiff replied. (ECF No. 52). Also before the Court are Plaintiff's motion for leave to amend his complaint (ECF Nos. 50, 56) Plaintiff's motion requesting Defendant be ordered to produce certain discovery (ECF No. 53), and Plaintiff's motion requesting that his state criminal charges be transferred to this court (ECF No. 57). For the following reasons, this Court will deny Plaintiff's motion to amend judgment and will in turn deny Plaintiff's remaining motions.

**I. BACKGROUND**

This Court summarized the factual background of this matter as follows in its opinion granting Defendant summary judgment:

In this action, Plaintiff, Sanford Williams, raises a claim for false arrest/false imprisonment against Detective Christopher Reinhardt arising out of Plaintiff's arrest for the theft of approximately forty truck batteries. (ECF Nos. 7, 8). The documents submitted by the parties in support of and in opposition to the current motion establish the following factual background for that claim. On November 26, 2013, Detective Reinhardt was called to an open lot in Livingston, New Jersey, to investigate the theft of some forty batteries from dump trucks stored in that lot. (Document 3 attached to ECF No. 29 at 5). While investigating that incident, the detective found a pair of brown work gloves – one on the ground of the lot, and another "inside the battery box of one of the trucks." (*Id.*). Although these gloves were dirty and could not be checked for finger prints, they were not frozen to the ground or otherwise indicative of having spent a significant period of time outside. (*Id.*). Reinhardt also found a pair of vise grip pliers on the hood of a truck parked by the street, though it wasn't clear whether this was actually used in the theft. (*Id.*). Following the placement of the gloves and pliers into evidence, the gloves were shipped off to the New Jersey State Police for DNA testing. (*Id.*).

Initial DNA testing, which was returned in January 2014, indicated that the gloves both contained DNA from the same source (*see* ECF No. 36 at 36), but that this DNA did not match any profile that was then available in CODIS, the Combined DNA Index System maintained by the FBI. (Document 3 attached to ECF No. 29 at 5). An official report produced by the lab in April 2014 likewise confirmed that the State Police could not identify the DNA contained in the gloves at that time without being provided a sample to test against the gloves. (ECF No. 36 at 34). The investigation of the theft of the batteries apparently stalled at that point.

On August 6, 2014, however, Reinhardt received a letter from a forensic scientist from the New Jersey State Police's laboratory. (ECF No. 36 at 32). In that letter, Reinhardt was informed that during a new search of CODIS, "a match occurred between [the glove DNA sample] and New Jersey convicted offender Sanford Williams" and that the State Police had therefore provided the letter as a possible lead in Reinhardt's investigation. (*Id.*; *see also* Document 3 attached to ECF No. 29 at 13). The letter did present a caveat, however, which stated that although Plaintiff's CODIS sample had matched the gloves, the State Police could not definitively conclude that Plaintiff was the source of the DNA

2

without directly comparing the glove sample against a new buccal sample from Plaintiff. (ECF No. 36 at 32).

Based on this letter, Reinhardt ran a search for Plaintiff and discovered that Plaintiff had a criminal history "dating back to the 1960s" including prior arrests for stealing batteries from vehicles. (Document 3 attached to ECF No. 29 at 13). Reinhardt's search for Plaintiff also turned up an April 2014 report from the Morris County Prosecutor's officer which listed Plaintiff as a fugitive from justice (Document 3 attached at ECF No. 29 at 7), and a report from the Ramapo Police Department regarding Plaintiff's having been stopped along the Bergen County Border with New York on April 11, 2014. (Document 3 attached to ECF No. 29 at 9). In that report, the Ramapo police stated that Plaintiff had been pulled over by a Chester Township police officer on April 11, 2014. (*Id.*). At that time, Plaintiff was already wanted by the Ramapo police for "stealing truck/bus batteries in January 2014." (*Id.*). The letter further stated that, when Ramapo police took control of Plaintiff's car, the car contained six such batteries. (*Id.*). The Ramapo report also stated that Plaintiff was known to sell stolen batteries to auto parts and salvage yards, and that batteries had previously been recovered at an auto parts store in Newark. (*Id.*).

Based on the potential DNA match and the background evidence suggesting that Plaintiff had a history of engaging in the theft of large vehicle batteries in the past, Reinhardt concluded that he had probable cause to arrest Plaintiff for the theft of the batteries in Livingston. (Document 3 attached to ECF No. 29 at 13). Reinhardt therefore prepared a complaint arrest warrant, presented the information he possessed to a municipal court administrator/municipal judge named Walter Mollinueax, and received a signed warrant for Plaintiff's arrest from the municipal judge on August 25, 2014. (*Id.*). Reinhardt then attempted to reach Plaintiff at a phone number he provided during his last arrest, but met with no success, and therefore asked Plaintiff's federal probation officer to set up a meeting so that Plaintiff could be taken into custody on the warrant issued on August 25. (*Id.*). Plaintiff was thereafter arrested at the probation officer's office on September 9, 2014, based on Reinhardt's warrant. (Document 4 attached to ECF No. 29 at 3). Following Plaintiff's arrest, a further DNA test confirmed that Plaintiff was, indeed, the source of the DNA in the gloves (ECF No. 36 at 38), and Plaintiff was ultimately indicted for the theft of the batteries in May 2015. (ECF No. 36 at

3

30).

(ECF No. 46 at 1-3).

## II. DISCUSSION

### A. Legal Standard

The scope of a motion to amend a judgment pursuant to Rule 59(e) is extremely limited. *See Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). A Rule 59(e) motion may be employed "only to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* "'Accordingly, a judgment may be altered or amended [only] if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [decided the motion], or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'" *Id.* (quoting *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.2d 237, 251 (3d Cir. 2010)). In this context, manifest injustice "generally . . . means that the Court overlooked some dispositive factual or legal matter that was presented to it," or that a "direct, obvious, and observable" error occurred. *See Brown v. Zickefoose*, Civil Action No. 11-3330, 2011 WL 5007829, at *2, n. 3 (D.N.J. 2011) (quotations and citations omitted).

### B. Analysis

In his Rule 59(e) motion, Plaintiff argues that this Court should reconsider its grant of summary judgment in essence because Plaintiff alleges that Defendant did not have probable cause to arrest Plaintiff for the theft of the truck batteries discussed above. In support of this argument, Plaintiff offers his own subjective disagreement with this Court's prior opinion and alternate

explanations for how gloves containing his DNA arrived at the scene of the battery theft. Plaintiff thus does not present any newly discovered evidence that was not previously available, nor does he present any change in the case law, and as such his motion could only succeed if he were to show that this Court made a clear error of fact or law, or that a manifest injustice would arise from the grant of summary judgment. *Blystone*, 664 F.3d at 415. While Plaintiff may disagree with this Court's prior ruling, and may have alternate explanations for the evidence available to Reinhardt when he arrested Plaintiff, none of the information in Plaintiff's motion to amend in any way suggests that this Court made a mistake as to the facts or law or that a manifest injustice has resulted from the grant of summary judgment.

As this Court explained in relevant part in the summary judgment opinion,

> To establish a false arrest/false imprisonment claim under § 1983, a plaintiff must establish that he was arrested by a state actor without probable cause. *Sharrar v. Felsing*, 128 F.3d 810, 827 (3d Cir. 1997), *abrogated on other grounds*, *Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007); *Paszkowski v. Roxbury Twp. Police Dep't*, 581 F. App'x 149, 152 (3d Cir. 2014) (the proper inquiry in a § 1983 false arrest is whether "the arresting officers had probable cause to believe the person arrested had committed the offense."). "[A]n arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). As the Third Circuit explained in *Wilson*, "a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant,' and (2) that 'such statements or omissions are material, or necessary to the finding of probable cause." *Id.* (quoting *Sherwood*, 113 F.3d at 399); *see also Dempsey v. Bucknell Univ.*, --- F.3d ---, ---, 2016 WL 4434400, at *6 (3d Cir. 2016). Thus, an officer must present to the neutral magistrate accurate and materially complete information or "the protection afforded by the

magistrate's review is lost." *Dempsey*, 2016 WL 4434400 at *6. Thus, Defendant's argument that he is entitled to judgment as a matter of law merely because he received a warrant is inaccurate, and that argument provides no basis for the granting of his motion at this time. As Defendant does not provide copies of any affidavit he presented to the municipal court in this matter, this Court is unable to address whether he made any material omissions in that presentation. For the reasons explained below, however, this Court need not address that question to resolve Plaintiff's claim.

Defendant, in his moving papers, also asserts factually that, given all available facts in his possession on August 25, 2014, he possessed probable cause to arrest Plaintiff, and is thus entitled to summary judgment.[] As this Court previously explained to Plaintiff, probable cause exists "'whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.'" *Paszkowski*, 581 F. App'x at 152 (quoting *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)). A finding of probable cause therefore only requires that there be a "fair probability" that the plaintiff committed the crime for which he is to be arrested. *Wilson*, 212 F.3d at 789. Given this requirement, courts both within this federal circuit and in New Jersey have concluded that a preliminary CODIS DNA match can itself be sufficient to support a finding of probable cause where the DNA sample being tested came from evidence reasonably connected to the alleged crime. *See United States v. McNeil*, No. 06-373, 2007 WL 2234516, at *7-8 (W.D. Pa. Aug. 2, 2007) (finding that a preliminary DNA CODIS match between the defendant and a freshly smoked cigarette found outside a crime scene where a witness stated that her robber had smelled like cigarette smoke sufficient for probable cause); *see also State v. Stevenson*, 2011 WL 4444478, at *4 (N.J. App. Div. Sept. 27, 2011) (preliminary DNA match between the defendant's CODIS sample and blood stains found at a burglary scene where the victim did not know Defendant sufficient to establish probable cause).

Based on the facts known to Reinhardt at the time he sought the arrest warrant for Plaintiff, it is clear that Reinhardt possessed probable cause to suspect that Plaintiff had stolen the truck batteries in Livingston. That conclusion is warranted here because Reinhardt possessed not only the preliminary CODIS match which strongly suggested that Plaintiff had worn the gloves found at the

6

>   crime scene including the glove found in one of the battery boxes of the trucks, but also because that match led Reinhardt to reports that Plaintiff had a history of engaging in similar incidents – stealing batteries out of large vehicles and reselling them to junk yards and auto parts stores. Given this information, which this Court concludes is at least reasonably trustworthy, a reasonably cautious officer in Reinhardt's position would certainly conclude that it is quite likely that Plaintiff was responsible for the theft of the truck batteries in Livingston. As such, it was more than fairly probable that Plaintiff was responsible based on the facts at hand, and Reinhardt was correct to conclude that probable cause existed for Plaintiff's arrest at the time Reinhardt sought the warrant. *Wilson*, 212 F.3d at 789; *Paszkowski*, 581 F. App'x at 152. Thus, even putting aside the warrant which Reinhardt ultimately obtained, it is clear that Defendant is entitled to summary judgment on Plaintiff's false arrest/false imprisonment claims because Reinhardt possessed probable cause to arrest him at the time of the arrest. *Wilson*, 212 F.3d at 786-87; *Paszkowski*, 581 F. App'x at 152 (a false arrest claim requires that the plaintiff show he was arrested without probable cause); *see also Sharrar*, 128 F.3d at 827; *Groman v. Twp. Of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Defendant's motion must therefore be granted, and judgment entered in Defendant's favor as to Plaintiff's false arrest/false imprisonment claim.

(ECF No. 46 at 6-9).

As explained above, the key question in this matter was whether Reinhardt had probable cause to arrest Plaintiff. If Reinhardt had probable cause, Plaintiff's false arrest and imprisonment claims cannot stand, regardless of the existence of the warrant in this matter and regardless of whether proper procedure was followed in obtaining that warrant. *Paszkowski*, 581 F. App'x at 152. For the reasons this Court set forth in its summary judgment opinion which are recounted above, Reinhardt clearly possessed probable cause to suspect that Plaintiff committed the truck battery theft based on the preliminary DNA match, the records of Plaintiff's apparent history of similar offenses.

Plaintiff hinges his arguments for amendment on two points: that the DNA match was

7

preliminary and would need to be confirmed with a direct test, which did not occur until after he was arrested, and that Plaintiff can provide alternative explanations for both how his gloves arrived at the scene of the truck robbery and for his history of similar past offenses. Plaintiff contends that this Court's grant of judgement in turn amounts to a credibility determination in favor of Reinhardt over Plaintiff's version of events. Plaintiff, however, is mistaken. This Court need not judge credibility to determine that Reinhardt had probable cause to arrest Plaintiff. As discussed above, many courts including those in New Jersey have held that a preliminary DNA match with evidence reasonably connected to an alleged crime is sufficient in and of itself to warrant a finding of probable cause. *See, e.g., McNeil*, 2007 WL 2234516 at *7-8; *Stevenson*, 2011 WL 4444478 at *4. Combined with Plaintiff's apparent criminal history, there can be no doubt that Reinhardt had probable cause to arrest Plaintiff for the reasons discussed above. That there may be alternative explanations for how the gloves arrived on scene, or for how the events involved in Plaintiff's criminal history unfolded, while certainly relevant to Plaintiff's underlying criminal prosecution, is immaterial to the sole question that was before this Court – whether Reinhardt possessed probable cause.

Based on the preliminary DNA match and Plaintiff's criminal history, Reinhardt clearly possessed probable cause to arrest Plaintiff, and Plaintiff has presented nothing in his motion to amend judgment or responses to the summary judgment motion which would create a genuine issue of material fact as to whether Reinhardt did possess probable cause. As such, Reinhardt was entitled to summary judgment. Plaintiff's subjective disagreement with that conclusion in no way warrants reconsideration of that grant of judgment. As such, this Court made no mistake of law or fact, let alone a clear mistake, and nothing Plaintiff has presented in any way suggests that a

manifest injustice has resulted from the grant of summary judgment. Plaintiff has therefore presented no valid basis for amendment or reconsideration of this Court's grant of summary judgment, and his motion to amend judgment is therefore denied. Because this Court is denying Plaintiff's motion to amend judgment, Plaintiff therefore has no entitlement to further discovery in this matter, and his motion to produce certain documents (ECF No. 53) must therefore also be denied as moot.

Plaintiff has also filed motions for leave to file an amended complaint and to have his criminal case transferred to this Court from the Superior Court of New Jersey. (ECF Nos. 50, 56-57). In his motions for leave to amend his complaint, Plaintiff essentially seeks to file a supplemental complaint after a final grant of judgment on his original complaint to raise claims unrelated to his false arrest claims – specifically claims that the Essex County Prosecutor's Office denied him due process and his rights to a speedy trial by delaying his prosecution until after he is released from county jail in Pennsylvania. (ECF No. 56 at 2-5; Document 1 ECF No. 57 at 1-5).

As one court in this District has explained,

> Under Rule 15(d), on motion and reasonable notice, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The Court may permit supplementation even though the original pleading is defective in stating a claim or defense." Fed. R. Civ. P. 15(d). Motions to supplement a pleading "are left to the sound discretion of the Court." *Fancaster, Inc. v. Comcast Corp.*, No. 08-2922, 2010 WL 4320422, at *3 (D.N.J. Oct. 26, 2010) (quoting *Glenside West Corp. v. Exxon Co., U.S.A.*, 761 F. Supp. 1118, 1134 (D.N.J. 1991)). Under most circumstances, a motion to file a supplemental pleading should be denied "only where there is undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility of amendment." *Albanian Assoc. Fund v. Twp. Of Wayne*, No. 06-3217, 2007 WL 4232966, at *1 (D.N.J. Nov. 29,

> 2007). The Court may also deny a supplemental complaint "when it would raise new issues and unduly delay resolution of the case." *Id.*
>
> Courts have therefore properly denied requests to supplement a complaint where the supplemental pleading "relates only indirectly, if at all, to the original complaint and the alleged cause of action arose out [of] an entirely unrelated set of facts and related to a defendant not implicated in the original complaint." *Bohm v. Straw*, No. 12-16J, 2013 WL 100441, at *14 (W.D. Pa. Jan. 8, 2013) (quoting *Nottingham v. Peoria*, 709 F. Supp. 542, 544 (M.D. Pa. 1988)); *see also Dockery v. Wetzel*, No. 11-1368, 2013 WL 664931, at *3 (M.D. Pa. Feb. 22, 2013); *Seymour/Jones v. Lefebvre*, No. 90-2267, 1991 WL 165203 at *1 (E.D. Pa. Aug. 22, 1991); *Corp. Comm. Consultants v. Dubner Comp. Syst.*, 1982 WL 1879 at *4 (D.N.J. May 27, 1982); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1510 (3d ed. 2004). As one court has recently observed, permitting a prisoner to file a supplemental complaint containing claims only tangentially related to those in the initial complaint would "defeat the purpose of Rule 15(d), as well as the intention behind the Prison Litigation Reform Act . . . [by allowing prisoners] to tack on unrelated claims in a single lawsuit and avoid the payment of the required filing fee in a new action." *Dockery*, 2013 WL 664931 at *3.

*Love v. New Jersey Dep't of Corr.*, No. 14-5629, 2015 WL 2226015, at *6-7 (D.N.J. May 12, 2015).

In his motion for leave to file an amended complaint, Plaintiff essentially seeks to file a supplement to his original complaint raising a new claim arising after his original false arrest claim which is only tangentially related to his original complaint on which this Court has already entered judgment in favor of Defendant. To permit Plaintiff to file such a supplement would "defeat the purpose of Rule 15(d), as well as the intention behind the Prison Litigation Reform Act" by permitting Plaintiff to "tack on unrelated claims in a single lawsuit and avoid the payment of the required filing fee in a new action." *Id.* (quoting *Dockery*, 2013 WL 664931 at *3). As such, to

10

grant such a motion for leave would be improper, especially after judgment has been entered on the original complaint. Plaintiff's motions for leave to file an amended/supplemental complaint (ECF Nos. 50, 56) are therefore denied. *Id.* The Court additionally notes that the only Defendant Plaintiff names in his motions for leave to amend, the Essex County Prosecutor's Office, is immune from suit under § 1983 at any rate, and that Plaintiff's proposed supplement would therefore be futile, providing a further reason for the denial of his motions. *See, e.g. Beightler v. Office of Essex Cnty. Prosecutor*, 342 F. App'x 829, 832-33 (3d Cir. 2009) (noting that Prosecutor's office is entitled to sovereign immunity for law enforcement functions, such as its actions in conducting and pursuing a prosecution).

Finally, this Court turns to Plaintiff's motion seeking to have his state criminal charges transferred to this Court. As Plaintiff himself admits, he is currently facing theft related charges in the New Jersey state courts arising out of New Jersey state law. State criminal prosecutions may be removed from the state courts to federal court only under limited circumstances, such as where the criminal defendant was acting as an officer of the United States or is being denied equal protection by the state courts. *See, e.g.,* 28 U.S.C. §§ 1443, 1455; *In re Piskanin*, 408 F. App'x 563, 564-65 (3d Cir. 2010); *see also Pennsylvania v. Brown-Bey*, 637 F. App'x 686, 688-89 (3d Cir. 2016). Even where those limited circumstances exist, the notice of removal or request to remove must be filed "not later than 30 days after the arraignment in the State Court, or at any time before trial, *whichever is earlier*" unless Plaintiff can show good cause for his failure to file within time. 28 U.S.C. § 1455(b)(1) (emphasis added). Likewise, such a request or notice of removal must include all grounds for removal, and where a criminal defendant wishes to state that he is being denied equal protection under § 1443, he must specify what statute or law is denying

11

him equal protection or "demonstrate that the [state] courts would not afford him the full protection of the law." *Brown-Bey*, 637 F. App'x at 688-89. Such an equal protection based removal, however, can be granted only where the criminal defendant can show that he is either being deprived of his federal rights under "a federal law 'providing for specific civil rights stated in terms of racial equality'" or where his "civil rights 'would inevitably be denied by the very act of being brought to trial in state court.'" *Pennsylvania v. Randolph*, 464 F. App'x 46, 46 (3d Cir. 2012) (quoting *Davis v. Glanton*, 107 F.3d 1044, 1047, 1049 (3d Cir. 1997)).

Here, Plaintiff seeks to have his criminal matter transferred to this Court more than a year after his arraignment and release on bail by the Essex County Superior Court in October 2015. (*See* Document 1 attached to ECF No. 57 at 3). Clearly, Plaintiff's request is being made far more than thirty days after his arraignment, and Plaintiff has failed to set forth good cause for his delay in requesting the transfer of his case to this Court. Plaintiff's request must therefore be denied as untimely. 28 U.S.C. § 1455(b)(1). Similarly, Plaintiff has failed to set forth any valid basis for the transfer or removal of his criminal case to this court in so much as his request is based solely on alleged delay in his prosecution while he has been held in jail in Pennsylvania and ineffective assistance of counsel. *See Randolph*, 464 F. App'x at 46. Plaintiff's motion requesting the transfer of his criminal prosecution to this Court must therefore be denied.

## III. CONCLUSION

For the reasons stated above, this Court will deny Plaintiff's motion to alter or amend this Court's grant of summary judgment (ECF No. 48), will deny as moot Plaintiff's motion to produce certain discovery (ECF No. 53), will deny Plaintiff's motions for leave to amend (ECF Nos. 50, 56), and will deny Plaintiff's motion requesting the transfer of his underlying criminal matter (ECF No. 57). An appropriate order follows.

DATED: FEB 2 2017

Hon. Jose L. Linares,
United States District Judge